NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0367-23

RONALD DONNERSTAG,
KRISTIN LANKO, LISA
SNIDER, WENDY VACANTE,
MATTHEW DELPRETE,
PATRICIA FORTUS, JAIME
CESTARE, SCOTT ALFANO
and LYNNE SWEEZO,

Complainants-Appellants,

v.

MERISSA BORAWSKI, CENTRAL
REGIONAL BOARD OF
EDUCATION, OCEAN COUNTY,

Respondent-Respondent.

_____

APPROVED FOR PUBLICATION

April 3, 2025

APPELLATE DIVISION

Argued October 29, 2024 – Decided April 3, 2025

Before Judges Sumners, Perez Friscia and Bergman.

On appeal from the School Ethics Commission, New Jersey Department of Education, Docket No. C20-22.

Daniel R. Dowdy argued the cause for appellants (Selikoff & Cohen, PA, attorneys; Daniel R. Dowdy, of counsel and on the briefs; Steven R. Cohen, on the briefs).

Paul E. Kiel argued the cause for respondents (Gold, Albanese & Barletti, LLC, attorneys; James N. Barletti, of counsel and on the brief; Paul E. Kiel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent School Ethics Commission (Sadia Ahsanuddin, Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

Appellants, Central Regional Board of Education (Board) members Ronald Donnerstag, Kristin Lanko, Lisa Snider, Wendy Vacante, Matthew Delprete, Patricia Fortus, Jaime Cestare, Scott Alfano, and Lynne Sweezo, appeal the School Ethics Commission's final agency decision dismissing their twelve-count complaint under the School Ethics Act (Act), N.J.S.A. 18A:12-21 to -34, seeking disciplinary action against fellow Board member, respondent Merissa Borawski. Appellants' allegations targeted Borawski's posts and reposts uploaded to her public social media account while she was a Board member-elect and a Board member regarding labor union membership, COVID-19 mandates, and State gender identity curriculum. In addition, appellants allege Borawski violated Governor Philip Murphy's Executive Order 251 by not wearing a facemask at a public Board meeting while a Board member.

A-0367-23

We affirm the Commission's grant of Borawski's motion to dismiss allegations in counts one, two, three, four, five, eight, nine, ten, eleven, and twelve that she violated N.J.S.A. 18A:12-24.1(a) regarding her social media posts criticizing COVID-19 mandates and gender identity curriculum, and non-compliance with Executive Order 251. We also affirm the Commission's grant of Borawski's motion to dismiss allegations in counts six and seven that she violated N.J.S.A. 18A:12-24.1(e) regarding her social media posts and reposts criticizing COVID-19 mandates and applauding the acquittal of an alleged racist. We, however, reverse the Commission's grant of Borawski's motion to dismiss the allegation in count three that she violated N.J.S.A. 18A:12-24.1(e) by her non-compliance with Executive Order 251, and remand for the Commission to address the merits of the count.

We affirm the Commission's summary decision finding that the allegations in counts two, four, five, eight, nine, ten, eleven, and twelve did not violate N.J.S.A. 18A:12-24.1(e). We, however, reverse the Commission's summary dismissal of Borawski's allegations in count one that she violated N.J.S.A. 18A:12-24.1(e) regarding her social media post challenging labor union membership and remand to the Commission to determine the appropriate penalty.

A-0367-23

I.

A.  School Ethics Complaint

On November 2, 2021, Borawski was elected to the Board.  She used her social media account to campaign for her election and continued to post and repost to it after she was sworn-in as a Board member on January 7, 2022.

On March 2, 2022, appellants filed a seven-count complaint against Borawski with the Commission, alleging that Borawski, while a Board member-elect and Board member, uploaded numerous posts on her social media account which violated two provisions of the Act.  Appellants cited N.J.S.A. 18A:12-24.1(a), which states:  "I will uphold and enforce all laws, rules and regulations of the State Board of Education, and court orders pertaining to schools.  Desired changes shall be brought about only through legal and ethical procedures."  They also cited N.J.S.A. 18A:12-24.1(e), which states:  "I will recognize that authority rests with the [B]oard of [E]ducation and will make no personal promises nor take any private action that may compromise the board."

On May 2, 2022, appellants amended their complaint by adding five more counts regarding her social media posts that occurred after the initially filed complaint.  Their amended complaint before us asserts:

> Count One – In violation of N.J.S.A. 18A:12-24.1(a)
> and N.J.S.A. 18A:12-24.1(e), Borawski, on January 17,

2022, reposted on her social media account a "lawsuit update" stating, in pertinent part: "Finally, you have good numbers and your numbers will grow if the state or schools try to change the number of [vaccination] shots required. You should really consider forming new unions and organized labor actions, especially if you are in a [school] district where you have real numbers." The post also opposed New Jersey's COVID-19 testing policy.

Count Two – In violation of N.J.S.A. 18A:12-24.1(a) and N.J.S.A. 18A:12-24.1(e), Borawski, on January 18, 2022, shared an "anti-vaccine" post to her social media account from the American Frontline Nurses.

Count Three – In violation of N.J.S.A. 18A:12-24.1(a) and N.J.S.A. 18A:12-24.1(e), Borawski, on January 20, 2022, failed to wear a face mask at a Board meeting held in a public school building as required by Executive Order 251.

Count Four – In violation of N.J.S.A. 18A:12-24.1(a) and N.J.S.A. 18A:12-24.1(e), Borawski, on February 10, 2022, reposted to her social media account an "invitation for a roundtable discussion for union members from NJStandsUp," which states in part: "Are you a member of a union? Are you against Gov. Murphy's radical Covid mandates? We NEED YOU at a round-table discussion!" She also added the words "Join in now" at the top of the post.

Count Five – In violation of N.J.S.A. 18A:12-24.1(e), Borawski, on January 17, 2022, reposted to her social media account a video that "compares the treatment of unvaccinated individuals to the treatment of the Jewish people during the Holocaust." The "anti-vaccination and antisemitic post" states: "DISCRIMINATION OF

5

JEWS WAS ENFORCED BY CONVINCING THE PUBLIC THEY WERE SUPER SPREADERS."

Count Six – In violation of N.J.S.A. 18A:12-24.1(e), Borawski, on November 16, 2021 while a Board member-elect, reposted an image to her social media account accompanied by the following caption: "WE SHALL NO LONGER BE KNOWN AS THE UNVAXXED (sic) WE SHALL NOW BE REFERRED TO AS: THE PURE BLOODS."

Count Seven – In violation of N.J.S.A. 18A:12-24.1(e), Borawski, on November 19, 2021 while a Board member-elect, posted a link to her social media account of a news story describing Kyle Rittenhouse's not guilty verdict.[1] She added the following praise of her own: "Thank God for true justice."

Count Eight – In violation of N.J.S.A. 18A:12-24.1(a) and N.J.S.A. 18A:12-24.1(e), Borawski, on March 7, 2022, the day New Jersey's school mask mandate was lifted, reposted a meme of a child giving a thumbs up, with text stating "ME LISTENING TO THE GOV TELL ME I CAN START DOING THINGS I NEVER STOPPED DOING IN THE FIRST PLACE." Above the image, she added: "This is my kids today. . . . Bare faced the whole time."

Count Nine – In violation of N.J.S.A. 18A:12-24.1(a) and N.J.S.A. 18A:12-24.1(e), Borawski, on April 6, 2022, posted several times to her social media account opposition to New Jersey's guidelines regarding the teaching of transgender issues. She stated: "Do you know what you [sic] children are being taught in NJ?

---

[1] In November 2021, Kyle Rittenhouse, a white male, was acquitted of homicide and numerous other counts for shooting three men—two fatally—in August 2020, during a protest of the police shooting of Jacob Blake, a black male.

6

Educate yourself and make changes in your district." She added several comments to her own post, purporting to share what is taught in New Jersey schools that she finds objectionable, including the proposition: "Being a boy or a girl doesn't have to mean you have those parts, but for most people this is how their bodies are."

Count Ten – In violation of N.J.S.A. 18A:12-24.1(a) and N.J.S.A. 18A:12-24.1(e), Borawski, on April 9, 2022, reposted to her public social media account a Fox News video stating: "NJ TO TEACH 2ND GRADERS ON GENDER IDENTITY." She added: "There is a sick war on our children! But we have the power to stop it. It is my mission to put [sic] expose and end this."

Count Eleven – In violation of N.J.S.A. 18A:12-24.1(a) and N.J.S.A. 18A:12-24.1(e), Borawski, on April 11, 2022, reposted to her social media account two posts eliciting New Jerseyans to call Governor Murphy and express opposition to New Jersey Department of Education Learning Standards. She added: "Parents have a voice! Call Murphy to OPPOSE the [H]ealth Education [S]tandards that will be implemented this fall!"

Count Twelve – In violation of N.J.S.A. 18A:12-24.1(a) and N.J.S.A. 18A:12-24.1(e), Borawski, on April 14, 2022, shared a post on her social media page from the "Van Drew for Congress" social media page, which encouraged readers to watch Congressman Jeff Van Drew "blast Governor Phil Murphy and the Radical Left on Fox News for their bizarre and absurd plans to teach children as young as 6 and 7 years old about 'gender ID' and 'gender change.'"

B.  School Ethics Commission's Dismissal of Appellant's Complaint

On August 23, 2022, the Commission, construing "the facts in the light most favorable to the non-moving party [(appellants)], and determin[ing] whether the allegation(s), if true, could establish a violation(s) of the Act" per N.J.A.C. 6A:28-8.3, granted in part and denied in part Borawski's motion to dismiss in lieu of an answer.  The Commission dismissed all the alleged violations of N.J.S.A. 18A:12-24.1(a) set forth in counts one, two, three, four, eight, nine, ten, eleven, and twelve.  As for the alleged violations of N.J.S.A. 18A:12-24.1(e), the Commission dismissed counts three, six, and seven, but declined to dismiss counts one, two, four, five, eight, nine, ten, eleven, and twelve, and transferred the matter to the Office of Administrative Law (OAL) for a hearing on the remaining counts.

Following discovery, appellants moved for summary decision.  Borawski did not cross-move for relief.  The Administrative Law Judge (ALJ) issued an initial decision granting appellants summary decision as to the N.J.S.A. 18A:12-24.1(e) allegations in counts one, two, four, five, eight, nine, ten, eleven, and twelve.  In disciplining Borawski's conduct, the ALJ considered that Borawski removed her social media posts pursuant the Board's March 17, 2022 resolution and her posts thereafter contained disclaimers that "her . . .  postings were made

8

in her personal capacity, and not as a [B]oard member." Yet, the ALJ determined "censure is the appropriate sanction" because the harm caused by her posts was "already done."

On August 22, 2023, the Commission issued its final agency decision rejecting the ALJ's initial decision and finding "Borawski did not violate N.J.S.A. 18A:12-24.1(e)" as asserted in counts one, two, four, five, eight, nine, ten, eleven, and twelve. Thus, appellants' entire complaint was dismissed, resulting in this appeal.

II.

The Commission is charged with resolving complaints of unethical conduct filed against school board members. N.J.S.A. 18A:12-29. Upon the filing of a complaint against a member of a local school board, the Commission "shall determine whether the conduct complained of constitutes a violation of th[e A]ct, or in the case of a board member, th[e A]ct or the code of ethics, or whether the complaint should be dismissed." N.J.S.A. 18A:12-29(c). The Commission is authorized to dismiss a complaint, "or specific allegations in [a] complaint[]," based on a "[l]ack of jurisdiction," N.J.A.C. 6A:28-9.2(a)(1), or when "[t]he complaint, on its face, fails to state a claim under the Act," N.J.A.C. 6A:28-9.2(a)(7).

The Commission decides a motion for summary decision under N.J.A.C. 1:1-12.5(b), applying "substantially the same" standard a trial court employs in considering a Rule 4:46-2 summary judgment motion. Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995). Like the trial court, an agency's findings of fact "are considered binding on appeal when supported by adequate, substantial and credible evidence." Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Summary decision is appropriate "where the undisputed material facts . . . indicate that a particular disposition is required as a matter of law." In re Robros Recycling Corp., 226 N.J. Super. 343, 350 (App. Div. 1988). Yet, we owe no deference to the trial court's conclusions of law. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (citations omitted). In contrast, we "strive to give substantial deference to the interpretation [the] agency gives to a statute that the agency is charged with enforcing." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 423 (2008) (alteration in original) (internal quotation marks and citations omitted). We review the grant of summary decision de novo. N.J. Div. of Tax'n v. Selective Ins. Co. of Am., 399 N.J. Super. 315, 322 (App. Div. 2008).

A-0367-23

"[W]e will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute." In re Camden Cnty. Prosecutor, 394 N.J. Super. 15, 22-23 (App. Div. 2007) (emphasis omitted) (quoting Cnty. of Gloucester, Bd. of Chosen Freeholders v. Pub. Emp. Relations Comm'n, 107 N.J. Super. 150, 156 (App. Div. 1969) aff'd, 55 N.J. 333 (1970)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Adoption of Amendsments to Northeast, Upper Rariten, Sussex Cnty., 435 N.J. Super. 571, 582 (App. Div. 2014) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)). Arbitrary and capricious action means that an agency engaged in "willful and unreasoning action, without consideration and in disregard of the circumstances." Northgate Condo. Ass'n v. Borough of Hillsdale Planning Bd., 214 N.J. 120, 145 (2013) (quoting Worthington v. Fauver, 88 N.J. 183, 204 (1982)).

Guided by these principles, we address appellants' contentions regarding the dismissal of their complaint through the motion to dismiss and summary decision.

III.

Motion To Dismiss

In its August 23, 2022 agency decision, the Commission granted Borawski's motion to dismiss the alleged violations of N.J.S.A. 18A:12-24.1(a) in counts one, two, three, four, eight, nine, ten, eleven, and twelve, and the alleged violations of N.J.S.A. 18A:12-24.1(e) in counts three, six, and seven. The Commission denied the motion to dismiss the alleged violations of N.J.S.A. 18A:12-24.1(e) in counts one, two, four, five, eight, nine, ten, eleven, and twelve. We separately address the dismissals.

A. N.J.S.A. 18A:12-24.1(a) Violations – Counts One, Two, Three, Four, Eight, Nine, Ten, Eleven, and Twelve

In dismissing the alleged violations of N.J.S.A. 18A:12-24.1(a) in counts one, two, three, four, eight, nine, ten, eleven, and twelve, the Commission decided that even accepting the facts averred in those counts as true, they would not support findings that Borawski violated the statute. The alleged violations of N.J.S.A. 18A:12-24.1(a) in these counts were correctly dismissed on procedural grounds. The Commission's ruling was not arbitrary, capricious, or unreasonable.

To sustain a violation of N.J.S.A. 18A:12-24.1(a), a complainant "shall include a copy of a final decision from any court of law or administrative agency

of this State demonstrating that the respondent(s) failed to enforce all laws, rules, and regulations of the State Board of Education, and/or court orders." N.J.A.C. 6A:28-6.4(a)(1). Because there is no indication in the record that appellants complied with N.J.A.C. 6A:28-6.4(a)(1), they failed to establish a violation of N.J.S.A. 18A:12-24.1(a). Appellants do not argue that the Commission misinterpreted N.J.A.C. 6A:28-6.4(a)(1) in dismissing their allegations that Borawski violated N.J.S.A. 18A:12-24.1(a).

As to count three's sole allegation that Borawski violated N.J.S.A. 18A:12-24.1(a) by disregarding Executive Order 251, there is no dispute the mandate was a valid exercise of the Governor's authority. However, executive orders are not specifically included in N.J.A.C. 6A:28-6.4(a)(1), which states "laws, rules, and regulations of the State Board of Education, and/or court orders," and we do not have the authority to amend the regulation to include them. See, e.g., Marino v. Marino, 200 N.J. 315, 329 (2009) (alteration in original) (citing O'Connell v. State, 171 N.J. 484, 488 (2002) ("We will not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'")). Since there is no final court or administrative agency order that Borawski violated Executive Order 251, count three is entirely dismissed.

13

Accordingly, we do not address the merits of appellants' contention based on N.J.S.A. 18A:12-24.1(a) that Borawski's failure to wear a mask was a "public[] and vocal[]" violation of the Executive Order while a Board member.

B. N.J.S.A. 18A:12-24.1(e) Violations – Counts Six and Seven

In dismissing the alleged violations of N.J.S.A. 18A:12-24.1(e) in counts six and seven, the Commission determined that Borawski's social media account postings were not covered by the Act because they were made on November 16 and 19, 2021, when she was a Board member-elect and had not been sworn-in yet as a Board member. The Commission dismissed the counts, finding it "does not have jurisdiction to regulate or sanction the conduct of a school official that occurred before he or she was subject to the requirements of the Act."

Appellants do not specifically address the dismissal of count six — Borawski's November 16 anti-vaccination post. However, as to count seven — Borawski's November 19 Kyle Rittenhouse post — they argue they were never given the opportunity to be heard due to the Commission's jurisdictional bar. They argue they relied on the Commission's Advisory Opinion A36-17, which clearly stated that the Commission has jurisdiction over newly elected school board members who have not yet been seated. The opinion states, in relevant part:

> Similar to all other newly elected, as well as currently seated, Board members, this Board member is bound by and charged with understanding and complying with the ethical standards set forth in the Act.
>
> [Advisory Op. A36-17, at 2 (Sch. Ethics Comm'n Jan. 3, 2018).]

Appellants stress that by abandoning its own jurisdictional holding, which they reasonably relied on, the Commission denied them due process and the right to be heard on this issue. Silviera-Francisco v. Bd. of Educ. of City of Elizabeth, 224 N.J. 126, 141 (2016) (citing N.J. Office of Emp. Rels. v. Commc'n Workers of Am., 154 N.J. 98, 108 (1998)) (alterations in original) ("[A] court that recognizes a jurisdictional defect should notify the parties and permit them to address the issue of the court's jurisdiction."). Appellants further contend that Borawski's "transparently racist post" remained on her social media account after she was sworn-in and compromised the Board.

We discern no error in the Commission's ruling that it lacked jurisdiction to address count seven as well as count six because their allegations arose before Borawski was a Board member. The Commission clarified its Advisory Opinion A36-17, finding:

> To the extent that [appellants] believe that language from Advisory Opinion A36-17 [], specifically, "[s]imilar to all other newly elected, as well as currently seated, Board members," stands for the proposition that

school officials are bound by the standards enumerated in the Act prior to the start of their term, such reliance is misplaced. <u>The language in A36-17 was written to ensure that all new Board members understand that, once their term begins, they, like their currently seated colleagues, are immediately bound by the provisions of the Act.</u> Moreover, A36-17 details the Commission's advice regarding the subject school official's prospective behavior and did not in any way suggest that the Commission had the authority to find a violation of the Act and/or recommend a sanction for conduct that occurred prior to the start of a school official's term.

[(Emphasis added).]

Therefore, the Commission clarified its advisory opinion by ruling it does not have jurisdiction under the Act for a school board member's conduct arising before the board member's swearing-in.

We also conclude appellants' due process rights were not violated. The inquiry before the Commission in Advisory Opinion A36-17 was "whether there are any ethical prohibitions on this Board member's activities given that he is currently enrolled in the District as a student." Advisory Op. A36-17, at 1. The Commission determined "there is no basis to presume that this Board member's status as a Board member is somehow diminished, or limited, because he is a student." Id. at 2. Thus, the student Board member was permitted to vote on matters involving personnel, collective bargaining, labor grievances, school

related activities, and student activities. Ibid. The Advisory Opinion did not address the specific issue raised here in counts six and seven — whether the Act covers allegations of a board member-elect's conduct. The Advisory Opinion recognized the opinion is "determined by, and [is] limited to, the facts presented before it." Id. at 3. The Commission did not therefore waive a prior jurisdictional ruling regarding the Act's application to the alleged misconduct of a Board member-elect.

### C. N.J.S.A. 18A:12-24.1(e) Violation – Count Three

In dismissing the alleged violation of N.J.S.A. 18A:12-24.1(e) in count three that Borawski violated Executive Order 251, the Commission determined Borawski "made a personal decision not to wear a mask during a public Board meeting," and appellants did not provide any facts showing how this "personal decision . . . exceeded the scope of her duties as a Board member, or how it could have compromised the Board." We disagree with the Commission as its ruling was arbitrary, capricious, or unreasonable.

We favor appellants' argument that, while a sitting Board member, Borawski's failure to wear a mask at the public Board meeting contrary to the Governor's mandate "urg[ed] others to do the same." Even if her decision was "personal," it is reasonable to conclude the Board may have been

17

"compromised" in violation of N.J.S.A. 18A:12-24.1(e) because she was bound to adhere to the mandate. There is a definite nexus between Borawski's personal action and her conduct while a Board member at a public Board meeting. Such actions had the potential to undermine the authority of the Board on which she sits and, thus, the Commission's decision to dismiss this count was not based on sufficient credible evidence and was arbitrary, capricious, and unreasonable. We reverse and remand to the Commission to determine the merits of count three. We leave it to the Commission to determine if a fact-finding hearing before an ALJ is needed to resolve the count's allegation, or if it can be resolved through a summary decision.

IV.

Summary Decision

In its August 22, 2023 final agency decision, the Commission rejected the ALJ's summary decision that Borawski's social media posts, as alleged in counts one, two, four, five, eight, nine, ten, eleven, and twelve, violated N.J.S.A. 18A:12-24.1(e). The Commission relied upon its decision in Aziz v. Nikitinsky, setting forth a two-part test to determine whether a board member's social media posts violate the Act. SEC No. C-56-22 (Oct. 17, 2022) (slip op. at 8). The test is:

> [(1)] whether a reasonable member of the public could perceive that the school official is speaking in his or her official capacity or pursuant to his or her official duties. . . . [(2)] Whether a school official is perceived as speaking in his or her official capacity and pursuant to his or her official duties turns, in large part, on the content of the speech.
>
> [Aziz, at 8 (internal quotations omitted).]

Furthermore, "'if the speech in question does relate to the business of the Board and/or its operations,' it may then be reasonable for the reader to perceive the speech as being offered in an official capacity and pursuant to his or her official duties, provided there is a sufficient nexus between the individual's social media page and his or her role/membership on the Board." Ibid. The Aziz ruling noted that a disclaimer on a social media post can "help to clarify" whether someone is speaking in their official capacity or pursuant to their official duties, but "the presence of a disclaimer is not dispositive." Ibid.

The Commission found that while the subject matter of Borawski's posts — labor union membership, COVID-19 mandates, and required transgender curriculum — may relate to Board business, "there is an insufficient nexus between [her] personal [social media] page and her membership on the Board, such that a reasonable member of the public would not perceive that [she] is speaking pursuant to her official duties." The Commission noted that while

Borawski's posts did not disclaim she was speaking as a Board member, the use of a disclaimer is helpful in making this determination but not dispositive. The Commission determined it was significant that her posts "do not mention [her] membership on the Board nor does she advertise or rely upon her Board membership when publishing material on her social media page." The Commission found it insignificant "that some people may be aware that [Borawski] is a Board member," but this "does not result in her private posts becoming in [sic] her official capacity."

Appellants argue the decision that there was an insufficient nexus between her social media account and her position on the Board is contrary to the "abundant evidence in the record." They stress Borawski regularly used her social media account to "publicly campaign[]" for Board election and announce her successful election. They further emphasize she admittedly used her social media account to discuss Board matters. Appellants argue that the school community reasonably perceived Borawski's posts were that of a Board member when community members protested her posts at public Board meetings. Appellants point to the unfair practice charge filed against the Board in direct response to the post in count one, which, they argue, "told teachers to drop out of their unions." Appellants also point to local news coverage of Borawski's

20

conduct that had brought negative attention to the Board. They assert that these responses to Borawski's posts clearly demonstrate how she compromised the Board. Thus, appellants assert the Commission's final decision was arbitrary and capricious.

We address the allegations in counts one, two, four, five, and eight through twelve involving Borawski's social media posts in three categories: anti-union; COVID-19 mandates; and teaching curriculum.

A. Anti-Union – Count One

Although we defer to the Commission's findings on laws it is directed to enforce, we are constrained here to conclude that its grant of summary judgment dismissal of count one was in error because it was not supported by the undisputed facts in the record. We conclude the ALJ correctly assessed the record and the law in determining that Borawski's repost to her social media account that advocated for labor union members to leave their current unions and form new unions opposed to vaccine mandates and COVID-19 testing violated N.J.S.A. 18A:12-24.1(e).

Borawski used her social media account to publicly communicate her Board activities. She used it to campaign for a seat on the Board; celebrated her election to the Board; and advocated issues affecting Board employees and

21

students. By supporting the formation of new unions, Borawski voiced her opposition to the collective bargaining group with whom the Board was legally obligated to negotiate the terms and conditions of teachers' employment in the school district. Thus, she spoke directly to the Board's legal responsibilities. Because she was a Board member, it is reasonable to believe that the school district community viewed her posts in that context which, in turn, compromised the Board. This was evidenced by the protests at the Board meeting and the unfair labor practice charge filed by Central Regional Education Association and New Jersey Education Association against the Board due to Borawski's anti-union assertion. See N.J.A.C. 6A:28-6.4(a)(5) ("Factual evidence of a violation of N.J.S.A. 18A:12-24.1.e shall include evidence that the respondent made personal promises or took action beyond the scope of the respondent's duties such that, by its nature, had the potential to compromise the district board of education or the board of trustees."). Borawski's reposts impacted collective bargaining between the Board and the union. Thus, the Board was compromised by her post.

Because Borawski's social media account was an extension of her Board member persona, our view of her post might differ had she disclaimed her comment as not speaking as a Board member. A disclaimer, however, may not

have been dispositive of the capacity Borawski was speaking through her post. See Aziz at 8. Yet, just months before the Commission's summary decision, it issued Advisory Opinion A02-22 (Sch. Ethics Comm'n Feb. 25, 2022), wherein its sentiment shifted to suggest that the inclusion of disclaimers is preferrable. In an apparent effort to guide members "to avoid violating, or being accused of violating, the [Ethics] Act," the Commission gleaned support from I/M/O Treston, C71-18 at 12, advising that:

> when use of social media and online publications has become commonplace . . . and given that there has been a significant influx in the number of complaints filed with the Commission regarding use (or nonuse) of disclaimers in electronic publications (not just on social media), it is now more critical than ever to underscore and emphasize that when Board members want to speak as private citizens, they must include an appropriate disclaimer that makes the capacity in which they are speaking clear and unambiguous.
>
> [(Emphasis added).]

The absence of a disclaimer here strongly supports appellants' position that Borawski's comments gave the school district community the impression she was speaking as a Board member and not giving her personal opinion.

In sum, we conclude the Commission's dismissal of the N.J.S.A. 18A:12-24.1(e) allegations in these counts was arbitrary, capricious, and unreasonable. We therefore reverse and remand to the Commission to recommend to the

23

Commissioner of Education whether Borawski should be "reprimand[ed], censure[d], suspen[ded], or remov[ed]" from the Board for her violation. See N.J.S.A. 18A:12-29(c).

## B. COVID-19 Mandates

In counts two, four, five, and eight, appellants claim Borawski violated N.J.S.A. 18A:12-24.1(e) because her social media posts voicing criticism of COVID-19 mandates compromised the Board. They argue the public perceived she was speaking as a Board member through these posts. While we conclude as noted above that credible evidence in the record indicates Borawski may have been perceived as speaking as a Board member, there is no evidence that these specific posts compromised the Board. The public comments at Board meetings and the local news coverage do not relate to the COVID-19 pandemic issues. And the union's unfair practice charge relates to alleged anti-union posts by Borawski and fellow Board member Melissa Koenig. We affirm the dismissal of the N.J.S.A. 18A:12-24.1(e) allegations in these counts as the Commission's decision was not arbitrary, capricious, or unreasonable.

## C. Teaching Curriculum

In counts nine, ten, eleven, and twelve, appellants claim Borawski violated N.J.S.A. 18A:12-24.1(e) because her social media posts criticizing the

State's gender identity curriculum compromised the Board. They argue the public perceived she was speaking as a Board member through these posts. While we conclude as noted above that credible evidence in the record indicates Borawski may have been perceived as speaking as a Board member, there is no evidence in the record that these posts compromised the Board. We affirm the dismissal of the N.J.S.A. 18A:12-24.1(e) allegations in these counts as the Commission's decision was not arbitrary, capricious, or unreasonable.

To the extent we have not addressed any of appellants' arguments, we conclude they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(D) and (E).

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0367-23